**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 22-1527
_____

JONATHAN VALENTIN,
Appellant

v.

PHILADELPHIA COUNTY SHERIFF'S DEPARTMENT;
DEPUTY OFFICER DEREK MURPHY, Badge No. 1609;
DEPUTY OFFICER AMANDA RODRIGUEZ, Badge No. 5535
_____

On Appeal from the United States District Court
for the Eastern District of Pennsylvania
(D.C. Civil Action No. 2-19-cv-01175)
District Judge:  Honorable Gene E. K. Pratter
_____

Submitted Pursuant to Third Circuit LAR 34.1(a)
August 23, 2023

Before:  SHWARTZ, BIBAS, and MONTGOMERY-REEVES, <u>Circuit Judges</u>

(Opinion filed: August 30, 2023)
_____

OPINION[*]
_____

PER CURIAM

_____

[*] This disposition is not an opinion of the full Court and pursuant to I.O.P. 5.7 does not constitute binding precedent.

Pro se appellant Jonathan Valentin appeals from an order of the United States District Court for the Eastern District of Pennsylvania granting Appellees' motion for summary judgment.  For the following reasons, we will affirm the District Court's judgment in part, vacate in part, and remand for further proceedings.

## I.

In 2019, Valentin commenced this action against the Philadelphia County Sheriff's Department and two of its officers, Derek Murphy and Amada Rodriguez.[1] Valentin alleged in his third amended complaint, which is the operative complaint here,[2] that on March 19, 2017, he arrived at the Philadelphia Family Court for supervised visitation with his son, but he was late and was denied entry to the nursery.  Valentin further alleged that upon being denied entry, Murphy began making fun of him; when he asked Murphy for his badge number, Murphy attacked him by grabbing him by his neck, placing him in a chokehold, and throwing him into a wall and onto the floor.  See ECF No. 20 at 4.  Valentin was then placed under arrest for assaulting an officer and was later sent to the hospital for treatment of an injury to his neck.  The day after his arrest, he was released from custody and the criminal charge was not pursued.  Based on those allegations, Valentin asserted criminal claims for reckless endangerment, simple and aggravated assault, false imprisonment, and document fraud.  He also asserted claims

---

[1] Per the defendants' filings, Rodriguez's first name is not "Amanda," as set forth in the case caption.

[2] Several additional filings denominated "civil complaints" followed Valentin's third amended complaint.  The District Court construed those filings as documents filed in opposition to the defendants' motion for summary judgment.

under 42 U.S.C. § 1983 for violation of his First and Fifth Amendment rights, false arrest, excessive use of force, and malicious prosecution.

The defendants denied the material allegations and moved for summary judgment. In support of their motion, they provided the declaration of Murphy, who declared that, after he told Valentin that he had to leave the building and could not visit his child, Valentin directed racial slurs at him and pushed his cell phone into his chest. See ECF No. 31-3 at 2. He further declared that Valentin walked toward the exit and continued to use racial slurs toward him. See id. at 3. Murphy stated that he walked over to the door and opened it for Valentin, and Valentin then "jabbed [Murphy's] chin with his cell phone." ECF No. 31-3 at 3. At that point, Murphy "grabbed [Valentin] and took him into custody." Id. The defendants also submitted the declaration of Rodriguez. She declared that as Murphy was escorting Valentin out of the building, she saw the two men "in a confrontation" and when she asked Murphy what was happening, he replied that Valentin had hit him. ECF No. 31-4 at 2.

Valentin opposed the motion and sought video surveillance footage of the incident. The defendants subsequently submitted surveillance footage of the courthouse lobby and exit at the time of the altercation. Upon reviewing the evidence, the District Court granted the defendants' motion for summary judgment as to all claims. Valentin timely appealed.

## II.

We have jurisdiction to consider this appeal under 28 U.S.C. § 1291. We review de novo the District Court's grant of summary judgment. See Dondero v. Lower Milford

Twp., 5 F.4th 355, 358 (3d Cir. 2021).  Summary judgment is appropriate "if the movant

shows that there is no genuine dispute as to any material fact and the movant is entitled to

judgment as a matter of law."  Fed. R. Civ. P. 56(a).  A genuine dispute of material fact

exists if the evidence is sufficient for a reasonable factfinder to return a verdict for the

nonmoving party.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).  In

evaluating a motion for summary judgment, "all justifiable inferences are to be drawn in

. . . favor" of the non-moving party.  Id. at 255.  "Credibility determinations, the

weighing of the evidence, and the drawing of legitimate inferences from the facts are jury

functions, not those of a judge . . . [when] ruling on a motion for summary judgment."

Id.

III.

On appeal, Valentin contends that, based on the evidence presented, including the

video surveillance footage, the District Court erred in granting summary judgment as to

his claims against Murphy for excessive force, false arrest, malicious prosecution,

assault, and First Amendment retaliation.[3]

---

[3] Contrary to the Appellees' contention that Valentin has waived all issues on appeal, we construe liberally Valentin's brief and conclude that he has sufficiently raised these issues.  See Erickson v. Pardus, 551 U.S. 89, 94 (2007) (per curiam).  However, Valentin has not adequately challenged the grant of summary judgment on the remaining claims, and we accordingly do not address them.  See Kost v. Kozakiewicz, 1 F.3d 176, 182 (3d Cir. 1993) ("[A]ppellants are required to set forth the issues raised on appeal and to present an argument in support of those issues in their opening brief.").

### A. Excessive Force

To state a claim for excessive force under the Fourth Amendment, a plaintiff must show that a seizure occurred and was carried out in an unreasonable manner.  See Curley v. Klem, 499 F.3d 199, 203 n.4 (3d Cir. 2007); Estate of Smith v. Marasco, 430 F.3d 140, 148 (3d Cir. 2005).  The reasonableness standard "requires careful attention to the facts and circumstances of each particular case, including the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight."  Graham v. Connor, 490 U.S. 386, 396 (1989).

Here, the District Court determined as a matter of law that Murphy did not use excessive force against Valentin under the circumstances.  It relied on Murphy's declaration that Valentin repeatedly directed racial epithets toward him and pushed his cell phone into his chest.  The District Court noted that Valentin did not dispute that he subsequently struck Murphy in the chin with his cell phone in the doorway.  The District Court also relied on the video evidence of the altercation in making its reasonableness determination.  But upon review of that evidence, it does not show Murphy opening the door for Valentin, nor does it show Valentin pushing his cell phone into Murphy's chest or striking him with it.  Rather, the video (which does not contain audio) shows Valentin walking toward the exit, opening the door, and crossing the threshold before Murphy quickly approaches from behind and then apprehends him by forcefully pushing him against the exterior wall multiple times.  The two men are briefly out of frame before Murphy pushes Valentin, but it does not appear that Valentin has a cell phone in either of

his hands as he is attempting to exit the building or when he is brought back into the building.  Thus, the video evidence provided by the defendants and relied upon by Valentin created issues of fact, as that evidence conflicts with Murphy's declaration that he was merely opening the door so Valentin could leave.

Further, we disagree with the District Court's characterization of the video evidence as being "in stark contrast to" Valentin's allegations.  See ECF No. 57 at 10. Although the videos do not show Valentin on the floor as he alleged, they corroborate Valentin's claim that he was "thrown into a wall."  And the footage is not "unambiguously contrary to" his claims that he was grabbed by the neck and placed in a chokehold, as the two men are outside of the frame for a portion of the physical altercation.  Id.  Thus, viewing the facts in the light most favorable to Valentin, as we must at this stage, see Boyle v. County of Allegheny, 139 F.3d 386, 393 (3d Cir. 1998), Valentin may have been complying with the officers' orders and attempting to leave the courthouse.  But, instead of allowing him to exit, Murphy approached him, pushed him against a wall multiple times, and forcibly brought him back into the building that he was instructed to leave.  Under these facts, a rational jury could find that Murphy's use of force was unreasonable.  See El v. City of Pittsburgh, 975 F.3d 327, 336-37 (3d Cir. 2020) (affirming the District Court's conclusion that a reasonable factfinder could conclude that the officer's act of grabbing a compliant arrestee by the wrist and neck and "slamming" him into a wall amounted to excessive use of force).[4]  Thus, we conclude

---

[4] The video evidence also shows that the two men were engaged in a verbal argument prior to Murphy grabbing Valentin, and Valentin does not specifically deny directing

that the District Court erred in granting summary judgment to Murphy on Valentin's excessive force claim.[5]

## B. False Arrest

"To state a claim for false arrest under the Fourth Amendment, a plaintiff must establish: (1) that there was an arrest; and (2) that the arrest was made without probable cause." James v. City of Wilkes-Barre, 700 F.3d 675, 680 (3d Cir. 2012). "Generally, the existence of probable cause is a factual issue," although summary judgment can be granted in an appropriate case. Groman v. Twp. of Manalapan, 47 F.3d 628, 635 (3d Cir. 1995).

Here, Murphy arrested Valentin for assault on a police officer based on his claim that Valentin jabbed him in the chin with his cell phone as Murphy was opening the door for him. Under Pennsylvania law, a person is guilty of aggravated assault if he "attempts to cause or intentionally or knowingly causes bodily injury to [a law enforcement officer] in the performance of duty." 18 Pa. Stat. Ann. § 2702(a)(3). As

---

racial slurs at Murphy. Nevertheless, a rational factfinder could conclude that such insults did not justify Murphy's use of force. See Miller v. Leathers, 913 F.2d 1085, 1089 (4th Cir. 1990).

[5] We do not address Appellees' contention that Murphy would have been entitled to qualified immunity had the District Court determined that the force used was excessive, as Appellees did not present that argument in their motion for summary judgment. See ECF No. 31-3. In addition, to the extent that Valentin challenges the District Court's grant of summary judgment as to his criminal assault claim premised on Murphy's conduct, the District Court properly concluded that a private party has no right to the enforcement of criminal laws. See Leeke v. Timmerman, 454 U.S. 83, 85-86 (1981) (per curiam). We accordingly affirm the District Court's grant of summary judgment with respect to that claim.

discussed, the video evidence raises a fact issue as to whether Valentin struck Murphy in the chin with his cell phone.  Should the finder of fact determine that Valentin did not "jab" Murphy in the chin with his cell phone, it could determine that Murphy lacked probable cause to arrest him for assault on a police officer.  See Groman, 47 F.3d at 635.  The District Court accordingly erred in granting summary judgment as to the false arrest claim against Murphy.

### C. Malicious Prosecution

To the extent that the District Court granted summary judgment on Valentin's malicious prosecution claim because he did not submit proof that he was ever formally charged pursuant to his arrest, we agree that summary judgment was warranted.  Whereas false arrest consists of detention without legal process, a malicious prosecution claim "remedies detention accompanied, not by absence of legal process, but by *wrongful institution* of legal process."  Wallace v. Kato, 549 U.S. 384, 389-90 (2007).  Valentin concedes that he was released from custody the day after his arrest and never received a summons for an arraignment or other court proceeding.  See C.A. No. 9 at 12.  Accordingly, his claim that Murphy arrested him without probable cause sounds in false arrest rather than malicious prosecution.  See Johnson v. Knorr, 477 F.3d 75, 82 (3d Cir. 2007).  We will therefore affirm the District Court's entry of summary judgment in favor of Murphy with respect to Valentin's malicious prosecution claim.

### D. First Amendment Retaliation

Finally, Valentin contends that the District Court erred in granting summary judgment as to his claim that his arrest and the alleged assault by Murphy were in

retaliation to his exercising his First Amendment rights.  To prevail on his § 1983 First

Amendment retaliation claim, Valentin must prove that "(1) he engaged in

constitutionally protected conduct, (2) the defendant engaged in retaliatory action

sufficient to deter a person of ordinary firmness from exercising his constitutional rights,

and (3) a causal link [existed] between the constitutionally protected conduct and the

retaliatory action."  Palardy v. Twp. of Millburn, 906 F.3d 76, 80-81 (3d Cir. 2018)

(internal quotations and citation omitted).  Additionally, to the extent that the alleged

retaliation includes an arrest, Valentin "must plead and prove the absence of probable

cause for the arrest."  Nieves v. Bartlet, 139 S. Ct. 1715, 1724 (2019).

Here, Valentin contends that he engaged in protected activity when he asked

Murphy for his badge number.  Appellees contend that Valentin has waived this

argument by failing to raise it below.  However, Valentin alleged in his complaint and

reiterated in response to the motion for summary judgment that "Plaintiff asked [Murphy]

for his ba[dge] number, [Murphy] then attacked Plaintiff."  ECF No. 20 at 2.  The video

evidence appears to confirm this, as Valentin can be seen putting down his belongings

and he appears to be writing something down as Murphy points near the badge on his

uniform.  Viewing this evidence in a light most favorable to Valentin, it supports the

conclusion that he engaged in activity protected by the First Amendment by asking

Murphy to identify his badge number.  See Fields v. City of Philadelphia, 862 F.3d 353,

359 (3d Cir. 2017) (explaining that the First Amendment protects "[a]ccess to

information regarding public police activity"); Peterson v. Kopp, 754 F.3d 594, 602 (8th

Cir. 2014) (holding that criticizing a police officer and asking for his badge number is protected speech), abrogated on other grounds by <u>Nieves</u>, 139 S. Ct. at 1724.[6]

We also conclude that a rational jury could find that Murphy's arrest and use of force against Valentin constitutes adverse action sufficient to deter a person of ordinary firmness from exercising his or her constitutional rights.  <u>See</u> <u>Houston Comm. College Sys. v. Wilson</u>, 142 S. Ct. 1253, 1260 (2022) (listing arrest as an example of adverse action in the context of First Amendment retaliation); <u>Hall v. Merola</u>, 67 F.4th 1282, 1294 (11th Cir. 2023) (holding that use of force can satisfy the "adverse action" prong).

As for the causation element, we have already concluded that a reasonable finder of fact could determine that Valentin did not strike Murphy with his cell phone and, in turn, that probable cause for Valentin's arrest was lacking.  <u>See</u> <u>Nieves</u>, 139 S. Ct. at 1724 (explaining that the absence of probable cause "will generally provide weighty evidence that the officer's animus caused the arrest").  And Murphy has offered no justification other than assault on a police officer for his arrest of Valentin.  <u>See</u> <u>Nat'l State Bank v. Fed. Reserve Bank of New York</u>, 979 F.2d 1579, 1581 (3d Cir. 1992) ("To prove that no genuine factual issues exist, a [summary judgment] movant must present a factual scenario without any 'unexplained gaps.'") (citation omitted).  Additionally, based on the video evidence, the arrest and use of force were initiated approximately 45 seconds after Murphy can be seen pointing near his badge.  <u>See</u> <u>Watson v. Rozum</u>, 834 F.3d 417, 422 (3d Cir. 2016) (explaining that "an unusually suggestive temporal

---

[6] We do not review the District Court's determination that Valentin's use of racial slurs was unprotected speech because Valentin has not challenged such in his brief.

proximity between the protected activity and the allegedly retaliatory action" can be circumstantial evidence of a causal link).  Although the two men can be seen arguing even after their exchange regarding the badge number appears to end, the video evidence nonetheless raises issues of fact as to whether Murphy arrested Valentin and used force against him in retaliation for his protected speech.  We recognize that courts should generally exercise caution in allowing First Amendment retaliation claims brought against police officers to proceed to trial in the face of a summary judgment motion, see Estate of Smith v.  Marasco, 318 F.3d 497, 513 (3d Cir. 2003); nevertheless, we conclude that summary judgment was not warranted here.  We will thus vacate the grant of summary judgment motion as to this claim.

## IV.

In light of the foregoing analysis, we will vacate the grant of summary judgment in favor of Murphy with respect to the excessive force, false arrest, and First Amendment retaliation claims, affirm as to Valentin's remaining claims, and remand the case for further proceedings consistent with this opinion.  Valentin's motion to file a supplemental appendix is granted and his motion to file a reply brief out of time is denied as he has already been afforded several extensions of time.